David R. MERRILL et al., Plaintiffs,

v.

FEDERAL OPEN MARKET COMMITTEE OF the FEDERAL RESERVE SYSTEM, Defendant.

Civ. A. No. 75–736.

United States District Court, District of Columbia.

March 9, 1976.

Victor H. Kramer, Washington, D. C., for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Ann S. DuRoss, Asst. U. S. Atty., Jeffrey Axelrad, Bruce E. Titus, Attys., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

WADDY, District Judge.

In this action plaintiff, David R. Merrill, charges the defendant, Federal Open Mar-

ket Committee, with violating the Freedom of Information Act (FOIA), 5 U.S.C. § 552, by refusing to promptly make available certain of its records. The case is before the Court upon plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1]

Upon consideration of the cross-motions for summary judgment, the memoranda, affidavits, and exhibits in support of and in opposition to said motions, the respective statements of fact as to which there is no genuine issue, the hearing on said motions, and the entire record herein, the Court makes the following findings of fact and conclusions of law:

## BACKGROUND

David R. Merrill is a student at Georgetown University Law Center (Law Center) and a member of the Institute for Public Interest Representation (Institute), founded by the Law Center. Victor H. Kramer, who represents Merrill, is a professor at the Law Center and Director of the Institute.

Plaintiff claims that he has a strong interest in administrative law and the operation of Federal government agencies; that he desires to study the current operations of defendant and the process by which defendant regulates the national money supply through adoption of domestic policy directives, and the extent to which defendant considers current economic and financial factors in the adoption of its domestic policy directives and other policy actions.

The defendant, Federal Open Market Committee (FOMC, the Committee), consists of the members of the Board of Governors of the Federal Reserve System and five representatives, either presidents or first vice-presidents, of Federal Reserve banks.[2] The function of the FOMC as set forth in 12 U.S.C. § 263 is to regulate the open-market operations of Federal Reserve banks. Subsection (b) of that statute provides that:

"No Federal Reserve bank shall engage or decline to engage in open-market operations under sections 353 to 359 of this title except in accordance with the direction of and regulations adopted by the Committee. The Committee shall consider, adopt, and transmit to the several Federal Reserve banks, regulations relating to the open-market transactions of such banks."

Subsection (c) provides that:

"The time, character, and volume of all purchases and sales of paper described in sections 353–359 of this title as eligible for open-market operations shall be governed with a view to accommodating commerce and business and with regard to their bearing upon the general credit situation of the country."[3]

To carry out its statutory duties the FOMC has established a "Systems Open Market Account" for the obligations acquired pursuant to authorizations and directives issued by the Committee and held on behalf of all Federal Reserve banks.[4] Transactions for the Systems Open Market Account are executed by a Federal Reserve bank selected by the Committee.[5]

The function and effect of open-market operations are described by Robert C. Holland, a member of the Board of Governors of the Federal Reserve System and thus of

---

1. Initially, the complaint had two counts and two plaintiffs. The second count, the only count in which the second plaintiff was involved, was dismissed by stipulation of the parties filed on October 20, 1975.

2. 12 U.S.C. § 263(a).

3. Sections 353–359 allow the Federal Reserve banks to deal in the open market in such papers as certain cable transfers, bankers' acceptances, bills of exchange, gold coin, bullion, obligations of National, State, and Municipal governments, and acceptances of Federal intermediate credit banks and of national agricultural credit corporations. Those sections also involve the setting of discount rates and the establishment of accounts, correspondents, and agencies.

4. 12 C.F.R. § 270.2(d)

5. 12 C.F.R. §§ 270.4(b), 270.4(d). A limited exception is made in (d) when the chosen bank is closed.

the defendant, in an affidavit (the allegations of which are undisputed) accompanying the defendant's motion for summary judgment:

"4. Open market operations are important because of their prompt and direct influence upon the level of member bank reserves. When the Systems Open Market Account (SOMA) purchases securities in the open market, the payment is ordinarily deposited in the seller's bank and credited to that bank's reserve account in its regional Federal Reserve Bank. This process increases the total volume of bank reserves. Conversely, when the SOMA sells securities, the sales price typically is deducted from the buyer's bank's reserve account, thereby decreasing the volume of reserves held by member banks.

"5. Changes in the volume of member bank reserves necessarily influence the ability of member banks to expand loans and investments. Member banks are required to hold a certain amount of reserves behind their deposits in accord with Board's Regulation D, 12 C.F.R. § 204. These banks typically respond to a lowering of reserve requirements or to a supplying of reserves through Open Market purchases by expanding loans and investments and/or selling their newly excess reserves to other member banks which are short of reserves or which need additional reserves in order to take advantage of particular lending and investment opportunities. As a result, deposits, loans and investments for the banking system expand to about the limit permitted by the required reserve ratio.

"6. Changes in the availability of member bank reserves influence interest rates on money market instruments, including the Federal funds rate (the rate at which banks are willing to lend or borrow immediately available reserves on an overnight basis), and interest rates in the economy as a whole. Spending and

investment by all sectors of the economy and all levels of industry tend to be influenced by the terms and conditions of obtaining credit."

Although the announced policy of the FOMC is to meet "at least four times each year and oftener if deemed necessary" [6] the Committee typically meets once a month. The meeting agendas are described in 12 C.F.R. 272.3(e) as, in general, including

"approval of minutes of actions and acceptance of memoranda of discussion for previous meetings; reports by the manager and special manager on open market operations since the previous meeting, and ratification by the Committee of such operations; reports by economists on, and Committee discussion of, the economic and financial situation and outlook; Committee discussion of monetary policy and action with respect thereto; and such other matters as may be considered necessary."

### PLAINTIFF'S REQUEST

On March 7, 1975, Victor Kramer, as Director of the Institute, sent a letter captioned "Freedom of Information Act Request" to the Secretary of the Board of Governors of the Federal Reserve System [7] requesting, on behalf of David Merrill, access to the following for purposes of inspection and copying:

"(1) Records of policy actions taken by the Federal Open Market Committee at its meeting[s] in January 1975 and February 1975, including, but not limited to, instructions to the Manager of the Open Market Account and any other person relating to the purchase and sale of securities and foreign currencies.

"(2) Memoranda of discussion at the above meetings."

Kramer noted that an FOMC regulation stated that the Committee's economic policy directives and related information would

---

6. 12 C.F.R. 272.3

7. 12 C.F.R. § 271.4(c) requires any person seeking access to the Committee's records to request them from the Secretary of the Board.

not be available to the public for approximately 90 days after their adoption and that this appeared to the Institute to be a violation of the Freedom of Information Act.

By letter dated March 21, 1975, Arthur L. Broida, secretary to the Federal Open Market Committee, responded to the request. With respect to the records of policy action, Broida stated that the Committee had recently determined to make those records available after 45 days rather than 90 days following the relevant meeting and that those records would then be available to the general public, including Merrill. As to those records no claim was made that they were exempt under the Freedom of Information Act. Regarding the memoranda of discussion, Broida stated the Committee's position that those documents were exempt under exemption (b)(5) of the Freedom of Information Act. Broida further stated that although the Committee felt the memoranda to be exempt, the Committee did release the memoranda after a time delay of approximately five years. Broida listed reasons for the time delay in releasing the memoranda of discussion including: a need for candor at the meeting on the part of the participants; a need to preclude those sophisticated in market analysis and speculators from gaining unfair profits or advantages; prevention, to the extent possible, of any interference with the orderly execution of policies or obectives of other government agencies concerned with economic or fiscal matters; and a need to preclude, to the extent possible, interference with or impairment of ongoing or prospective financial transactions with foreign banks, bankers or countries.

On March 27, 1975, Kramer wrote to Broida appealing Broida's decision as being in violation of the Freedom of Information Act, inasmuch as no exemptions were claimed for the records of policy action and that under 5 U.S.C. 552(b) and *E. P. A. v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), segregable factual portions of the memoranda of discussion were nonexempt and were subject to prompt release.

By letter dated April 23, 1975, Robert C. Holland, member of the Board of Governors of the Federal Reserve System responded. Holland enclosed all of the records of policy action (45 days having elapsed since the meetings involved). He made no claim that the records of policy were exempt under the FOIA, but stated that the delay in disclosure of these records was "founded upon a legislative policy against premature disclosures which would impair the effectiveness of the operations of Government agencies." Holland stated that he affirmed Broida's decision with respect to the memoranda of discussion as being exempt under (b)(5) of the FOIA and that they contained no segregable factual materials subject to the requirements of *E. P. A. v. Mink,* 410 U.S. 73, 87–93, 93 S.Ct. 827, 836, 35 L.Ed.2d 119, 132 (1973). Holland further advised that his determination was final agency action and that a complaint for judicial review could be filed.

The instant complaint was filed on May 8, 1975. Plaintiff seeks a declaratory judgment that defendant has violated the Freedom of Information Act, 5 U.S.C. § 552, by deferring the public availability of its records of policy action for 45 days beyond the date of their adoption and by delaying the public release of segregable factual portions of the memoranda of discussion of its meetings for approximately five years following the relevant meetings.

## THE DOCUMENTS

### a. *Records of Policy Action*

At each meeting of the Committee a Domestic Policy Directive is adopted. The Directive is a statement of general monetary policy in the form of guidelines for the manager of the Systems Open Market Account. Less frequently the Committee also adopts amendments to its three other policy instruments: the Authorization for Domestic Open Market Operations, the Foreign Currency Directive and the Authorization for Foreign Currency Operations.

Following each meeting the Committee's Secretariat drafts a document entitled

"Record of Policy Actions."[8] The "Record of Policy Actions" consists of the records of the aforementioned policy actions adopted at the meeting, the underlying rationale therefore, and the vote of each member of the Committee thereon. The Secretariat's draft is then distributed to the participants at the meeting for their comments as to rationale, revised, and submitted to the Board of Governors for inclusion in its annual report to Congress.[9]

Pursuant to 12 C.F.R. § 271.5,[10] the Committee defers the public availability of all records of its policy actions until approximately 45 days after the meeting at which the actions were adopted. At that time the Domestic Policy Directive is published in the Federal Register and the "Record of Policy Actions" incorporated by reference therein and otherwise released.

### b. *Memoranda of Discussion*

The Memoranda of Discussion are minutes of the Committee's meetings. They are drafted after a meeting, circulated to the persons who attended the meeting for comments, revised, and approved at a subsequent Committee meeting.

The FOMC releases its Memoranda of Discussion to the public after a period of approximately five years following the relevant meeting. However certain portions, mostly relating to the foreign currency area, are deleted from the released Memoranda and never made publicly available.

### FREEDOM OF INFORMATION ACT

The Freedom of Information Act, 5 U.S.C. § 552, provides, *inter alia,* that:

"(a) Each agency shall make available to the public information as follows:

**8.** Plaintiff has sought all records of policy action. As is shown herein, these records exist in several forms among them the "Records of Policy Actions."

**9.** If, pursuant to 12 C.F.R. § 272.4, amendments are made to the Domestic Policy Directive between meetings, those amendments, together

(1) Each agency shall separately state and *currently publish* in the Federal Register for the guidance of the public—

.   .   .   .   .

(D) [S]tatements of general policy

.   .   ..

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

.   .   .   .   .

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

.   .   .   .

unless the materials are *promptly* published and copies offered for sale.

.   .   .   .   .

(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records *promptly* available to any person.

.   .   .   .   .

(emphasis added).

(b) This section does not apply to matters that are—

.   .   .   .   .

(2) related solely to the internal personnel rules and practices of an agency;

.   .   .   .   .

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

The Freedom of Information Act thus calls for either "current publication" or "prompt" disclosure of records subject to it.

with the reasons therefore and votes thereon, are included in the "Record of Policy Actions" for the most recent meeting.

See, 12 U.S.C. § 247a for the Board's recordkeeping responsibilities.

**10.** As amended, March 24, 1975, 40 Fed.Reg. 13204.

Defendant's policy of and reasons for deferring the public availability of the requested documents are expressed in 12 C.F.R. § 271.5, as amended, March 24, 1975, 40 Fed.Reg. 13204, as follows:

"(a) *Deferred availability of information.* In some instances, certain types of information of the Committee are not published in the FEDERAL REGISTER or made available for public inspection or copying until after such period of time as the Committee may determine to be reasonably necessary to avoid the effects described in paragraph (b) of this section or as may otherwise be necessary to prevent impairment of the effective discharge of the Committee's statutory responsibilities. For example, the Committee's domestic policy directive adopted at each meeting of the Committee is published in the FEDERAL REGISTER approximately 45 days after the date of its adoption; and no information in the records of the Committee relating to the adoption of any such directive is made available for public inspection or copying before it is published in the FEDERAL REGISTER or is otherwise released to the public by the Committee.

(b) *Reasons for deferment of availability.* Publication of, or access to, certain information of the Committee may be deferred because earlier disclosure of such information would

(1) Interfere with the orderly execution of policies adopted by the Committee in the performance of its statutory functions;

(2) Permit speculators and others to gain unfair profits or to obtain unfair advantages by speculative trading in securities, foreign exchange, or otherwise;

(3) Result in unnecessary or unwarranted disturbances in the securities market;

(4) Make open market operations more costly;

(5) Interfere with the orderly execution of the objectives or policies of other Government agencies concerned with domestic or foreign economic or fiscal matters; or

(6) Interfere with, or impair the effectiveness of, financial transactions with foreign banks, bankers, or countries that may influence the flow of gold and of dollar balances to or from foreign countries."

[redacted] As the Supreme Court stated in *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29, 39 (1975):

"It is sufficient to note for present purposes that the [Freedom of Information] Act seeks 'to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.' . . . As the Act is structured, virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions." (citations omitted).

The burden is on the agency to establish that the requested information falls within one of the exceptions.[11] This Court finds that defendant has not succeeded in carrying its burden.

The Committee attempts to justify the deferred availability of the records of its policy actions by asserting that they are exempt from the FOIA by subsections (b)(2) (Exemption 2) and (b)(5) (Exemption 5) of the Act. The only exemption briefed for and argued at the hearing was Exemption 5. It was only in a motion to amend the Court's findings at the hearing that the FOMC, for the first time, saw fit to raise Exemption 2. The apparent theory of the Committee's position is that the documents need not be released at all and the fact that they do release them 45 days after the meeting at which they were adopted (or to which they relate in the case of the "Records of Policy Actions") is due solely to the Committee's benevolence.

Exemption 2, belatedly claimed by the Committee for its records of policy actions, provides:

11. 5 U.S.C. § 552(a)(4)(B).

"(b) This section does not apply to matters that are—

(2) related solely to the internal personnel rules and practices of an agency."

■ The District of Columbia Circuit Court of Appeals dealt with this subsection in *Vaughn v. Rosen*, 523 F.2d 1136 (D.C.Cir. 1975). The majority of the Court found that the intent of Congress was reflected in the Senate Report as follows:

"Exemption No. 2 relates only to the internal personnel rules and practices of an agency. Examples of these may be rules as to personnel's use of parking facilities or regulation of lunch hours, statements of policy as to sick leave, and the like." [12]

The Court then stated:

"[W]e are of the view that the Senate Committee Report is authoritative and that Exemption 2 exempts from disclosure only routine 'house-keeping' matters in which it can be presumed the public lacks any substantial interest." [13]

Defendant's records of policy actions are clearly not "house-keeping" matters. Exemption 2 does not apply.

In his concurring opinion in *Vaughn*, Judge Leventhal stated that:

"It seems unlikely that the (b)(2) exemption is applicable only to the kind of routine or trivial agency personnel policies and practices itemized in the Senate Report. *But even so the exemption is limited to predominately 'internal personnel rules and practices of any agency.'* " [14] (Emphasis added)

The nature of the documents together with defendant's vigorous arguments concerning the influence of the policy decisions of the FOMC upon the nation's economic status and the fact that the documents are public-ly released on a deferred basis, demonstrate that even under Judge Leventhal's broader view, defendant's contention that Exemption 2 applies is without merit.

■ The other exemption claimed by the defendant for its records of policy actions, Exemption 5, provides:

"(b) This section does not apply to matters that are—

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

In *NLRB v. Sears, Roebuck & Co., supra,* the Supreme Court found it

"reasonable to construe Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil discovery context." [15]

Defendant herein relies upon executive privilege [16] recognized by the *Sears* court as having been specifically contemplated by Congress in enacting Exemption 5.[17] Finding that the ultimate purpose of executive privilege is to prevent injury to agency decisions, the Supreme Court determined that:

"Exemption 5, properly construed, calls for 'disclosure of all "opinions and interpretations" which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.' " [18]

In *Vaughn v. Rosen, supra,* our Court of Appeals expressed the thought this way:

"[T]o come within the privilege [for confidential intra-agency advisory opinions disclosure of which would be injurious to the consultative functions of government]

---

12. 523 F.2d at 1140–41.

13. *Id.,* at 1141.

14. 523 F.2d at 1151.

15. 421 U.S. at 149, 95 S.Ct. at 1515, 44 L.Ed.2d at 46 (footnote omitted).

16. Executive privilege is the generally recognized privilege for confidential intra-agency ad-visory opinions disclosure of which would be injurious to the consultative functions of government. *Id.*

17. *Id.* at 150, 95 S.Ct. at 1516, 44 L.Ed.2d at 47.

18. 421 U.S. at 153, 95 S.Ct. at 1517, 44 L.Ed.2d at 48.

and thus within Exemption 5, the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. Put another way, pre-decisional materials are not exempt merely because they are pre-decisional; they must also be a part of the agency give-and-take—of the deliberative process—by which the decision itself is made." [19]

Defendant's assertions that its records of policy actions are exempt under Exemption 5 rest on the specific holding of the Supreme Court as to the documents sought under the FOIA in the *Sears* case. *Sears* involved Advice and Appeals Memoranda by which, in certain instances, the General Counsel of the National Labor Relations Board (NLRB) instructs the Board's Regional Directors whether to file charges of unfair labor practices. The Supreme Court held that the Memoranda which conclude that no complaint should be filed and which have the effect of finally denying relief to the charging party are not within the scope of Exemption 5. However, those Memoranda directing the filing of a complaint and commencing litigation before the Board are exempt from disclosure under Exemption 5.

Defendant herein, analogizing its records of policy actions to the Advice and Appeals Memoranda which direct the filing of a complaint, argues that its records of policy actions are pre-decisional instructions to its staff and thus exempt under executive privilege. [20]

■ The Court finds that the FOMC has misread *Sears*. In addition to executive

privilege the *Sears* court found that Congress had intended to incorporate the attorney's work product privilege into Exemption 5. [21] The Supreme Court made clear that the Advice and Appeals Memoranda directing the filing of complaints are within Exemption 5 only because they are attorney's work product. [22] Since defendant has not raised the attorney's work product privilege with respect to its records of policy actions, its reliance on this holding in *Sears* is misplaced.

■ The Court finds no basis for the FOMC's assertion that its records of policy actions are within the executive privilege aspect of Exemption 5. Defendant's records of policy actions are not papers which reflect the Committee's group thinking in the process of working out its policy and determining what its law shall be. Defendant's records of policy actions are not pre-decisional nor part of the agency give-and-take—of the deliberative process—by which the decisions themselves are made. Defendant's records of policy actions *are the decisions themselves*, and, in the case of the "Records of Policy Actions", also the rationale therefor. [23] Defendant's records of policy actions *are* the embodiment of the FOMC's effective law and policy. Moreover, the point of executive privilege

"is that the 'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public; and the 'decisions' and 'policies formulated' would be the poorer as a result." [24]

Assuming *arguendo* that defendant's records of policy actions contain pre-decisional, deliberative material, the regular

---

19. 523 F.2d at 1143–44.

20. Defendant's Reply Memorandum Statement, at 7, 8. Transcript of hearing at 15–20 and 22.

21. 421 U.S. at 154, 95 S.Ct. at 1518, 44 L.Ed.2d at 49.

22. Id., at 160, 95 S.Ct. at 1521, 44 L.Ed.2d at 52. This *is consistent with* 5 U.S.C. § 552(a)(2)(C) which makes "instructions to staff that affect a member of the public" specifically disclosable, as the act does not apply to documents exempt under subsection (b), in-

cluding Exemption 5. Whether defendant's assertions that its Domestic Policy Directives are staff instructions makes the Directives subject to subsection (a)(2)(C) is a question not raised by plaintiff and which the Court finds unnecessary to reach.

23. "[T]he public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted." *Id.*, at 152, 95 S.Ct. at 1517, 44 L.Ed.2d at 48.

24. *Id.*, at 150, 95 S.Ct. at 1516, 44 L.Ed.2d at 47.

voluntary public release of the records by the FOMC approximately 45 days after each meeting indicates that there would be no point in applying executive privilege to these documents. Defendant has not sustained its burden of proving that its records of policy actions are exempt from disclosure under Exemption 5.

The Court's findings that defendant's records of policy actions are not exempt from the FOIA by subsection (b)(2) or (b)(5) of the Act are supported, if not compelled, by defendant's own interpretations of its records of policy actions. The Press Release of March 24, 1975,[25] announcing that the Committee had shortened the delay in the release of the records contains the following:

"A delay of approximately 90 days had been in effect since mid-1967 when the rules were changed to comply with the Freedom of Information Act. Prior to 1967, the records of policy actions were published only in the Board's Annual Report to Congress."

Obviously the Committee considered its records of policy actions to be subject to and not exempt from the Freedom of Information Act or it would not have found it necessary to change its disclosure policy to comply with the Act.

Furthermore, when plaintiff sought defendant's records of policy actions under subsection (a)(3) in his complaint and then additionally under subsection (a)(2) in his motion for summary judgment, the defendant responded:

"The FOMC's Domestic Policy Directive, which is quoted verbatim in each Record of Policy Actions, should be regarded as a statement of general policy within the meaning of 5 U.S.C.

§ 552(a)(1)(D). This conclusion is supported by 40 years of practice of the FOMC and the Board of Governors in submitting policy records to Congress each year, by the provisions of 12 U.S.C. § 247, and more recently by the practice of publishing the Directive and referencing the Records of Policy Actions in the *Federal Register.* To be sure, such a classification places a more onerous burden on the FOMC than the classification suggested by Plaintiffs, since publication is required."[26]   (footnote omitted).

■ The Court has no difficulty in accepting the FOMC's position that the Domestic Policy Directives are not exempt from the FOIA but are statements of general policy within the meaning of subsection (a)(1)(D).

Furthermore, since the "Records of Policy Actions" are incorporated by reference in the defendant's statements in the Federal Register they are not exempt from disclosure but must be promptly disclosed when finally adopted.[27] In *Sears, supra,* the Supreme Court made this statement:

"[W]e hold that, if an agency chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5."[28]   (Emphasis in original)

By being expressly incorporated by reference in the Domestic Policy Directive, the Records of Policy Actions lose whatever exempt status that they might have had under Exemption 5. And, as noted above, the only other exemption claimed by the Committee for the "Records of Policy Ac-

---

**25.** Attachment A to Defendant's Statement of Points and Authorities in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment.

**26.** Defendant's "Statement of Points and Authorities in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment" at 16.

**27.** Plaintiff has not sought a determination that the other policy actions must themselves be published in the Federal Register and the Court finds it unnecessary to reach the question.

**28.** 421 U.S. at 161, 95 S.Ct. at 1521, 44 L.Ed.2d at 53.

tions," *i. e.*, Exemption 2, clearly does not apply.

This Court can find no basis for the claim of the FOMC that it may withhold its records of policy actions for 45 days or the "Records of Policy Actions" after their approval on the grounds that they are exempt from the FOIA and their revelation a magnanimous gesture by the agency.

The Court therefore finds that defendant's Domestic Policy Directives are subject to 5 U.S.C. § 552(a)(1)(D) as statements of general policy. The Court further finds that defendant's policy actions other than the Domestic Policy Directives are subject to 5 U.S.C. § 552(a)(2)(B) as statements and interpretations of policy which have been adopted by the agency and are not published in the Federal Register. Additionally, the Court finds that those portions of the documents entitled "Records of Policy Actions" that contain other than statements and interpretations of policy are subject to the Act's catch-all provision, 5 U.S.C. § 552(a)(3).

There remains the question as to whether the release of the documents by the FOMC 45 days after the meeting at which the policy actions are adopted and to which the "Records of Policy Actions" relates, is "current" or "prompt" disclosure within the meaning of subsections (a)(1), (a)(2), and (a)(3) of the Act.

█ Again, accepting the FOMC's position that the Domestic Policy Directive is a statement of general policy within the meaning of Subsection (a)(1)(D), the FOMC is required to "separately state and currently publish" the Directive in the Federal Register. The Court finds that the requirements of (a)(1)(D) that statements of general policy be "currently published" in the Federal Register requires that such publication be made as soon as possible with no delay other than that occasioned by the normal process of publication in the Federal Register. By delaying the publication of the Domestic Policy Directive until 45 days after the meeting at which it was adopted

and after another Domestic Policy Directive has been adopted, the FOMC *never currently publishes* its Domestic Policy Directives but rather publishes one which is outdated. Obviously a delay of 45 days does not satisfy the statutory requirement to "currently publish".

█ Subsection (a)(2)(B) of the FOIA requires that statements and interpretations of policy not currently found in the Federal Register be made available for public inspection and copying unless "promptly published". For publication to be prompt so as to obviate the responsibility of the agency to make its records available for public inspection and copying there can be no attendant delay other than that occasioned by the normal publication process. If the "general philosophy of full agency disclosure"[29] mandated by the FOIA is to be realized, agencies may not be allowed to otherwise delay the public release of its documents.

█ The Freedom of Information Act contemplates public disclosure of current agency policy and not merely past policy. Defendant's practice of withholding its present policy records from the public for 45 days during the time the policy may be superseded is clearly contrary to the purposes of the Freedom of Information Act. A 45 day delay cannot be equated with "promptness".

█ Similarly the Court finds that those portions of the "Records of Policy Actions" subject to subsection (a)(3) must be released at the time of their approval in order to satisfy the requirement of the subsection that such records be made "promptly available."

In addition to the records of policy discussed above, plaintiff, in his complaint, sought "some or all" of the memoranda of discussion of defendant's meetings of January 20–21, 1975, and February 19, 1975. However, at the hearing on the cross-motions for summary judgment, plaintiff stat-

**29.** *NLRB v. Sears, Roebuck & Co., supra,* at 136, 95 S.Ct. at 1509, 44 L.Ed.2d at 39.

ed that he sought only those parts of the memoranda

"that contain segregable, discreet statements of fact, rather than statements of opinion for deliberation." [30]

[13, 14] Although FOMC releases the entire memoranda of discussion after approximately five years, defendant claims that its entire memoranda of discussion are exempt from the FOIA by subsection (b)(5) of the Act. However, subsection (b) as amended, 1974, provides:

"Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."

In *EPA v. Mink*, 410 U.S. 73, 91, 93 S.Ct. 827, 838, 35 L.Ed.2d 119, 134 (1973), the Supreme Court stated:

"It appears to us that Exemption 5 contemplates that the public's access to internal memoranda will be governed by the same flexible, common-sense approach that has long governed private parties' discovery of such documents involved in litigation with Government agencies. And, as noted, *that approach extended and continues to extend to the discovery of purely factual material appearing in those documents in a form that is severable without compromising the private remainder of the documents.*" (Emphasis added)

Plaintiff is entitled to the reasonably segregable factual portions of the memoranda of discussion of defendant's meetings of January 20–21, 1975, and February 19, 1975.[31]

In finding that the FOMC may not delay the public disclosure of its records of policy actions nor the factual portions of its mem-

oranda of discussion, the Court is not unmindful of the repeated insistence by the Committee that such disclosure would be injurious to its function and the nation's monetary and economic status. But the Freedom of Information Act requires prompt disclosure of non-exempt materials. FOMC has not satisfied the Court that the records sought in this proceeding are exempt from disclosure under any exemption in the Statute as enacted by Congress. If it is necessary for the FOMC to carry out its monetary policy in secrecy then that determination must be made by Congress and not this Court.

### *Conclusions*

Upon consideration of all of the foregoing the Court concludes that none of the reasons given in 12 C.F.R. § 271.5(b) for the deferred availability of information requested by plaintiff constitutes an exemption under subsection (b) of the Freedom of Information Act. 5 U.S.C. § 552.

Specifically, defendant's records of its policy actions are not exempt under subsection (b)(2) or (b)(5) of the Freedom of Information Act but are subject to the disclosure requirements of subsection (a) of the Act.

Defendant's Domestic Policy Directive is a statement of general policy which must be currently published in the Federal Register in accordance with subsection (a)(1)(D) of the Act.

Defendant's other policy actions are subject to subsection (a)(2) of the Act and in accordance with that subsection must be made available for public inspection and copying unless promptly published.

The portions of defendant's "Records of Policy Actions" that are not statements or

---

**30.** Transcript of hearing, page 5.

**31.** Defendant's repeated reliance on *Montrose Chemical Corp. of California v. Train*, 160 U.S. App.D.C. 270, 491 F.2d 63 (1974) is misplaced. In that case assistants prepared a summary of record evidence for use by the administrator in reaching a decision. The Court held that:

"When a summary of factual material on the public record is prepared by the staff of an

agency administrator, for his use in making a complex decision, such a summary is part of the deliberative process, and is exempt from disclosure under exemption 5 of FOIA." *Id.* at 71.

Defendant FOMC does not make a public record. Rather its meetings are held in secret and the contents revealed only after five years.

interpretations of policy are subject to subsection (a)(3) of the Act and must be promptly made available after approval in accordance with the provisions of that subsection.

Reasonably segregable factual portions of defendant's memoranda of discussion of its meetings of January 20–21, 1975, and February 19, 1975, are not exempt from the Freedom of Information Act by subsection (b)(5) of the Act but are subject to the prompt disclosure requirements of subsection (a)(3) of the Act.

Inasmuch as there is no genuine issue of material fact, an order and judgment will be entered herein granting plaintiff's motion for summary judgment and denying defendant's cross-motion.

    *     *     *     *     *     *

At the conclusion of the hearing on the cross-motions for summary judgment, counsel for the defendant requested the Court to stay that portion of its order relating to the records of policy action in order that defendant might exercise its right of appeal. The Court denied the request. Upon reconsideration and in view of defendant's vigorous representations as to the serious adverse consequences to its functioning and the nation's monetary policies and economy, the Court will now grant defendant's request and stay that portion of its Order requiring immediate production of its records of policy action for 10 days to allow defendant to exercise its right of appeal. If appeal is taken the stay will remain in effect pending the disposition of the appeal.