**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND; STOP ANIMAL EXPLOITATION NOW; COMPANION ANIMAL PROTECTION SOCIETY; ANIMAL FOLKS, *Plaintiffs-Appellants*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF AGRICULTURE; ANIMAL AND PLANT HEALTH INSPECTION SERVICE, *Defendants-Appellees.* | No. 17-16858 <br><br> D.C. No. 3:17-cv-00949-WHO <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted December 17, 2018
San Francisco, California

Filed August 29, 2019

Before: Consuelo M. Callahan and N. Randy Smith,
Circuit Judges, and Fernando M. Olguin,[*] District Judge.

Opinion by Judge N.R. Smith;
Dissent by Judge Callahan

---

[*] The Honorable Fernando M. Olguin, United States District Judge for the Central District of California, sitting by designation.

## SUMMARY**

### Freedom of Information Act

The panel reversed in part and affirmed in part the district court's dismissal for lack of subject matter jurisdiction of plaintiffs' action against the U.S. Department of Agriculture, alleging claims under the Freedom of Information Act ("FOIA") and the Administrative Procedure Act ("APA").

FOIA requires federal agencies to make certain agency records "available for public inspection in an electronic format." 5 U.S.C. § 552(a)(2). FOIA's judicial-review provision authorizes district courts to enjoin violations of this "reading room" provision. The Animal and Plant Health Inspection Service ("APHIS") enforces the Animal Welfare Act on behalf of the U.S. Department of Agriculture. In February 2017, APHIS removed various compliance and enforcement records from its website, and has represented that it will no longer post certain records.

Plaintiffs are animal rights organizations, and they alleged that defendants violated FOIA's reading-room provision. Plaintiffs requested that the district court enjoin the agency from withholding the records and order the agency to make the records publicly available in an electronic format on an ongoing basis.

The panel held that plaintiffs have standing because their inability to inspect documents in virtual reading rooms

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

harmed them in real-world ways, their injuries were different from the injuries sustained by other Americans who never regularly visited the online reading rooms, and their alleged injuries were "fairly traceable" to the agency's action, and likely to be redressed by their requested relief.

The panel held that 5 U.S.C. § 552(a)(4)(B) provided district courts with authority to order an agency to post records in an online reading room, and reversed the dismissal of the FOIA claims. The panel rejected APHIS's challenges to this holding. In addition to the text and structure of FOIA, several lines of Supreme Court and Ninth Circuit precedent support interpreting FOIA's judicial-review provision as authorizing district courts to order agencies to comply with their § 552(a)(2) obligations. The panel noted its disagreement with the D.C. Circuit's analysis in *Citizens for Responsibility & Ethics in Washington v. DOJ* ("*CREW I*"), 846 F.3d 1235, 1238–44 (D.C. Cir. 2017) (holding that FOIA constrains judicial enforcement of the reading-room provision).

The panel left it to the district court on remand to decide in the first instance whether plaintiffs have exhausted their reading room claim, or whether such exhaustion would be futile.

The panel affirmed the district court's dismissal of plaintiffs' Administrative Procedure Act claims because the potential for meaningful relief under FOIA displaced these claims.

Judge Callahan dissented in part. For the reasons set forth in *CREW I*, Judge Callahan would hold that FOIA provided an adequate alternative remedy, and courts lacked authority under FOIA to order agencies to make records available for public inspection. She would affirm the dismissal of plaintiffs' FOIA claim for lack of subject matter jurisdiction.

## COUNSEL

Margaret B. Kwoka (argued), Sturm College of Law, University of Denver, Denver, Colorado; Christopher Berry and Matthew Liebman, Animal Legal Defense Fund, Cotati, California; John S. Rossiter and Lindsey E. Dunn, Perkins Coie LLP, San Francisco, California; for Plaintiffs-Appellants.

Daniel Tenny (argued) and Michael S. Raab, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Defendants-Appellees.

Scott L. Nelson and Patrick D. Llewellyn, Public Citizen Litigation Group, Washington, D.C., for Amicus Curiae Public Citizen, Inc.

Robert G. Hensley, Legal Advocacy Senior Counsel, American Society for the Prevention of Cruelty to Animals, New York, New York, for Amicus Curiae American Society for the Prevention of Cruelty to Animals.

**OPINION**

N.R. Smith, Circuit Judge:

The Freedom of Information Act ("FOIA") requires federal agencies to make certain agency records "available for public inspection in an electronic format." 5 U.S.C. § 552(a)(2). FOIA's judicial-review provision authorizes district courts to enjoin violations of this "reading-room" provision. *See id.* § 552(a)(4)(B).

**BACKGROUND**

**The Legal Landscape**

Congress designed FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quoting *Rose v. Dep't of Air Force*, 495 F.2d 261, 263 (2d Cir. 1974)). Corruption, government inefficiency, and mistrust of public institutions all flourish "unless the people are permitted to know *what their government is up to.*" *See Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772–73 (1989) (quoting *EPA v. Mink*, 410 U.S. 73, 105 (1973) (Douglas, J., dissenting)); *see also id.* at 772 n.20. After all, public scrutiny and an informed citizenry are "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

To implement these goals, FOIA creates three different mechanisms for making agency records available to the

public.  First, the law compels agencies to publish certain categories of documents in the Federal Register.  5 U.S.C. § 552(a)(1).  Second, in the provision at issue in this case, FOIA requires agencies to make certain records "available for public inspection in an electronic format."  *Id.* § 552(a)(2). Third, under FOIA's most-recognized provision, members of the public may request agency records, and the agency—subject to limited exemptions—must produce them. *Id.* § 552(a)(3).  Agencies must provide the record "in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."  *Id.* § 552(a)(3)(B).

Unlike FOIA's "reactive" mechanism in § 552(a)(3), § 552(a)(2) identifies certain categories of records the agency must make available on an ongoing basis, no request necessary.  This affirmative obligation applies to:

> (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;
>
> (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;
>
> (C) administrative staff manuals and instructions to staff that affect a member of the public;
>
> (D) copies of all records, regardless of form or format—

(i) that have been released to any person under paragraph (3) [§ 552(a)(3)]; and

(ii)(I) that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or

(II) that have been requested 3 or more times; and

(E) a general index of the records referred to under subparagraph (D)[.]

*Id.* § 552(a)(2).

Section 552(a)(2) became known as the "reading-room" provision because, as the Department of Justice ("DOJ") explains, agencies historically met their § 552(a)(2) obligations by placing the appropriate records in a physical, public reading room. DOJ, *Dep't of Justice Guide to the Freedom of Information Act: Proactive Disclosures* ("*DOJ 2014 Guide to FOIA*"), 12–13 (July 23, 2014), https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/proactive-disclosures.pdf. However, Congress ushered FOIA into the electronic age in 1996, amending the statute to require proactively disclosed records created after November 1, 1996, to be available by "electronic means." *See* Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104-231, 110 Stat. 3048 (1996). In 2016, Congress again amended § 552(a)(2), this time specifying that agencies shall make records available "for public inspection in an electronic format." FOIA Improvement

Act of 2016, Pub. L. No. 114-185, 130 Stat. 538 (2016).
As a result, agencies today simply post records in
electronic reading rooms on their websites rather than
requiring citizens to visit an agency's physical reading
room in person. *See* DOJ, *Dep't of Justice Guide to
the Freedom of Information Act: Introduction*,
6 (April 11, 2019), https://www.justice.gov/oip/foia-
guide/proactive_disclosures/download; *DOJ 2014 Guide to
FOIA* at 12–13.

The 1996 amendments also added a new category of
records to the reading-room provision: frequently requested
records.  *See* Electronic Freedom of Information Act
Amendments of 1996, Pub. L. No. 104-231.  Legislative
reports, the DOJ, and the DOJ's Office of Information Policy
("OIP") justify the availability of frequently requested
records in terms of reducing requests for copies, streamlining
processing, and trimming bloated agency backlogs.[1]  The

---

[1] *See* S. Rep. No. 114-4, at 2 (2015), *as reprinted in* 2016
U.S.C.C.A.N. 321, 322 (identifying increasing requests and corresponding
backlogs as a barrier to "ensur[ing] that FOIA remains the nation's
premier transparency law"); H.R. Rep. No. 104-795, at 11, 21 (1996), *as
reprinted in* 1996 U.S.C.C.A.N. 3448, 3454, 3464 ("An underlying goal
of H.R. 3802 is to encourage on-line access to Government information
available under the FOIA, including requests ordinarily made pursuant to
section 552(a)(3)."); S. Rep. No. 104-272, at 5, 11, 13–14 (1996)
(explaining that  § 552(a)(2)(D) reduces duplicative FOIA requests);
*DOJ 2014 Guide to FOIA* at 11; DOJ OIP, *Congress Enacts
FOIA Amendments*, FOIA Update, Vol. XVII, No. 4 (Jan. 1, 1996),
https://www.justice.gov/oip/blog/foia-update-congress-enacts-foia-
amendments ("Ideally, [reading room availability of frequently
requested records] will satisfy much of the future public demand for those
processed records, in a more efficient fashion."); DOJ OIP, *OIP
Guidance: Electronic FOIA Amendments Implementation Guidance
Outline*, FOIA Update, Vol. XIX, No. 1 (Jan. 1, 1998),

2016 amendments retained an agency's ability to determine which records deserved § 552(a)(2) treatment based on the likelihood of "becom[ing] the subject of subsequent requests[,]" but also codified the "Rule of 3," requiring automatic reading-room treatment for records previously released under § 552(a)(3) and requested three or more times. 5 U.S.C. § 552(a)(2)(D).

In addition to the three key disclosure provisions, FOIA vests jurisdiction in federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). This provision provides for de novo review and places the burden on the agency "to sustain its action," except that courts must defer to an agency's affidavit concerning technical feasibility for purposes of the reading-room requirement to post manuals and instructions that affect a member of the public. *Id.*[2]

---

https://www.justice.gov/oip/blog/foia-update-oip-guidance-electronic-foia-amendments-implementation-guidance-outline ("[A]gencies should keep in mind that its purpose is to reduce the number of future requests for the same information.").

[2] The judicial-review provision, § 552(a)(4)(B), provides that "a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B)." Paragraph (2)(C) refers to § 552(a)(2)(C), which requires agencies to "make available for public inspection in an electronic format . . . administrative staff manuals and instructions to staff that affect a member of the public[.]" Subsection (b) sets forth the statutory exemptions from FOIA disclosure. *Id.* § 552(b). Paragraph (3)(B) refers to § 552(a)(3)(B), which provides that "an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."

**The Records**

The Animal Welfare Act ("AWA") sets minimum standards for the humane treatment of animals and regulates several categories of commercial animal enterprises. *See* 7 U.S.C. §§ 2131–59. The Animal and Plant Health Inspection Service ("APHIS") enforces the AWA on behalf of the U.S. Department of Agriculture ("USDA"). *See id.*; 9 C.F.R. §§ 1–12. These enforcement activities generate the five categories of agency records at issue in this case: annual reports;[3] inspection reports;[4] official warning letters;[5] pre-litigation settlement agreements;[6] and administrative complaints.[7]

---

[3] Federal regulations require scientific research facilities to submit these annual reports detailing the number and species of animals used in research, including descriptions of procedures producing pain and reasons why pain-relieving drugs were not used. *See* 9 C.F.R. § 2.36(b).

[4] APHIS inspectors assess whether facilities are complying with AWA standards for housing, ventilation, sanitation, veterinary care, and so on. These inspectors document violations—including instances of serious animal abuse or neglect—in inspection reports.

[5] Depending on the case, an inspection report may prompt a formal investigation, and these formal investigations can lead to issuing an official warning letter.

[6] When APHIS brings administrative enforcement actions seeking monetary penalties, it occasionally negotiates pre-litigation settlement agreements, which typically include a formal finding of an AWA violation and an agreed-upon fine.

[7] APHIS files administrative complaints before the Office of the Administrative Law Judge ("OALJ"). These documents explain APHIS's position on a violation and trigger the adjudicatory process.

For roughly the last decade, APHIS housed these records in databases in the FOIA reading-room portion of its website.**[8]** In its responses to particular record requests and internal guidance documents, APHIS has described the records as frequently requested. *See* USDA APHIS, *Letter from Kevin Shea, Acting APHIS Administrator, and Bill Clay, Acting APHIS Associate Administrator, to APHIS Management Team and Program Leaders Group* ("*APHIS Letter*"), 1 (June 19, 2009), https://www.aphis.usda.gov/foia/downloads/APHIS%20Co mmittment%20to%20Transparency.pdf. If already-posted information was responsive to a later FOIA request, APHIS would generally refer requesters to the APHIS online reading room.

Although APHIS reviewed the documents before posting and redacted them to protect personal privacy, APHIS grew concerned that its system for reviewing and redacting records was insufficient. In February 2017, APHIS removed the various compliance and enforcement records from its website. APHIS represents that it has devoted substantial resources to reviewing and re-posting the records. While it has made progress in re-posting some reports, APHIS has represented on appeal that it will no longer post official warning letters, stipulations, pre-litigation settlement agreements, and administrative complaints. *See* USDA APHIS, *Animal Care Information System Website Review Chart* (Aug. 18, 2017), https://www.aphis.usda.gov/aphis/ourfocus/animalwelfare/

---

**[8]** The Animal Care Information Search ("ACIS") database included annual reports and inspection reports; the Enforcement Actions ("EA") database contained the agency's enforcement responses, including all official warning letters, settlement agreements, and administrative complaints before the OALJ.

SA_AWA/acis-table.    Instead, it "will post statistical summaries each calendar quarter."  *Id.*

### The Dispute

Plaintiffs include the Animal Legal Defense Fund ("ALDF"), a national nonprofit headquartered in California that seeks to advance the interests of animals through the legal system; Stop Animal Exploitation Now ("SAEN"), an Ohio nonprofit geared at ending animal abuse in laboratories; Companion Animal Protection Society ("CAPS"), a national nonprofit dedicated to preventing animal abuse in pet shops and puppy mills; and Animal Folks, a Minnesota nonprofit that uses research and collaboration with local authorities to improve enforcement of animal protection laws.

Plaintiffs allege that FOIA's reading-room provision requires APHIS to post all of the documents at issue, because they are "frequently requested." *See* 5 U.S.C. § 552(a)(2)(D); *APHIS Letter*.  Plaintiffs further allege that APHIS must affirmatively disclose inspection reports, Letters of Information, official warning letters, and pre-litigation settlement agreements for the additional reason that these records constitute final agency orders.  *See* 5 U.S.C. § 552(a)(2)(A).

Plaintiffs allege that (1) they frequently used APHIS databases to access these records, (2) without access to the databases, they have been forced to issue individual FOIA requests for categories of information previously available in the APHIS databases, (3) they will continue to submit requests as long as the databases remain offline, (4) individual FOIA requests will consume more staff time and resources than using the free APHIS databases, and

(5) they have experienced extended wait periods for records requested from APHIS—a lapse of time that makes information they ultimately receive both stale and less helpful in achieving their goals. For example, declarations from ALDF and Animal Folks allege how the organizations have visited the online reading rooms, using agency records to identify areas of animal welfare concern and seek enforcement actions, including asking the USDA to revoke licenses or bring facilities into compliance. ALDF also pursues legal actions on behalf of its members, such as a recent lawsuit against a pet store chain, alleging the company violated consumer protection laws by representing it did not obtain puppies from "puppy mills."

The Executive Director of SAEN averred that he checked the databases up to ten times a day, and often issued press releases and filed enforcement actions within twenty-four hours of APHIS uploading records about problematic animal research facilities. One campaign culminated in the USDA revoking the company's dealer license, canceling its research registration, and imposing a $3.5 million fine.

CAPS has alleged its work involves acting as a watchdog, in that it performs its own investigations, compares them to APHIS's reports, and refers discrepancies to the Office of Inspector General ("OIG"). This work partly prompted the OIG's 2010 report exposing APHIS's continued lackluster enforcement. *See* USDA OIG, *Animal and Plant Health Inspection Service Animal Care Program Inspections of Problematic Dealers*, 1–3 (May 14, 2010), https://www.usda.gov/oig/webdocs/33002-4-SF.pdf.

**The Proceedings Below**

Plaintiffs' complaint first alleges the USDA and APHIS violated FOIA's reading-room provision.  They request that the district court enjoin the agency from withholding the aforementioned records and order the agency to make the records publicly available in an electronic format on an ongoing basis.  Plaintiffs' second claim requests the same relief under the Administrative Procedure Act ("APA").  *See* 5 U.S.C. §§ 702, 704.  Plaintiffs' third claim for relief alleges that APHIS's decision to remove two key databases from its website is a final agency action that is arbitrary, capricious, and an abuse of discretion.  *See id.* § 706.

After filing suit, Plaintiffs sought a preliminary injunction.    The district court ruled against them. Specifically, the district court concluded that Plaintiffs were unlikely to succeed on the merits of their claims, because FOIA plaintiffs  "may seek injunctive relief and production of documents to them personally," but "they cannot compel an agency to make documents available to the general public."   The district court also preliminarily concluded Plaintiffs had not properly exhausted their claim, because they had only made requests for particular records, but not "the precise relief they seek here (for APHIS to repost all previously available files to the APHIS databases)."

Plaintiffs then sent a letter to APHIS, requesting that the agency resume posting the records.  APHIS responded that "this submission is not a proper request under FOIA."[9]

---

[9] APHIS responded that "ALDF may request its own copy of these records or an opportunity to inspect them[,] . . . [h]owever, the USDA FOIA regulations, and FOIA itself, do not require the agency to comply

The district court subsequently granted APHIS's motion to dismiss for lack of subject matter jurisdiction, determining that courts may not compel agencies to publish records in online reading rooms under FOIA's reading-room provision. It did not address the exhaustion question.  Plaintiffs appealed, and we have jurisdiction under 28 U.S.C. § 1291. We reverse the dismissal of Plaintiffs' FOIA claim, but affirm with respect to Plaintiffs' APA claims, and remand.

## DISCUSSION

"We review de novo the district court's dismissal for lack of subject matter jurisdiction." *Yagman v. Pompeo*, 868 F.3d 1075, 1078 (9th Cir. 2017).

## I.

APHIS has not challenged Plaintiffs' standing.  However, courts have an "independent obligation" to police their own subject matter jurisdiction, including the parties' standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). Accordingly, we must assure ourselves that Plaintiffs have alleged an injury in fact, fairly traceable to the defendant's conduct, and likely to be redressed by a favorable judicial decision.  *Spokeo, Inc., v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Demonstrating injury in fact requires a plaintiff to show she suffered "'an invasion of a legally protected

---

with requests to publish records online.  Instead, they provide a means for those who wish to inspect or obtain copies of records to seek such relief from the agency."  Whether an "opportunity to inspect" is synonymous with "public inspection in an electronic format," *id.* § 552(a)(2), is not before us.

interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A "particularized" injury affects the plaintiff personally, and a "concrete" injury "must actually exist." *Id.*

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). Our independent obligation to assure ourselves of standing mimics the standard on a motion to dismiss, *see Bennett v. Spear*, 520 U.S. 154, 168 (1997), and "turns on the nature and source of the claim asserted," *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Plaintiffs have alleged "procedural" injuries, in that the reading-room provision requires government agencies to follow a particular procedure in making certain categories of documents available (i.e., making them "available for public inspection in an electronic format" without a triggering request, 5 U.S.C. § 552(a)(2), rather than just providing the records to individual requesters). The Supreme Court has explained that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo, Inc.*, 136 S. Ct. at 1549. "In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* In this case, we need not decide whether a bare statutory violation constitutes a cognizable injury in fact, because Plaintiffs allege that the agency's failure to make records available in its virtual reading rooms has "caused some

real—as opposed to purely legal—harm to the plaintiff." *See Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931 (2018). For example, ALDF has alleged that, because the agency has failed to affirmatively disclose the records, its members lack timely information to inform their daily lives (such as whether they are about to purchase a pet from a puppy mill known for abuses). Managing voluminous FOIA requests costs time and money to access the records on previously public and free APHIS databases. Waiting for the agency to produce records after a request makes information stale, allegedly hampering SAEN's rapid response tactics.

Plaintiffs also allege "informational" injuries. A plaintiff sustains a cognizable informational injury in fact when agency action cuts her off from "information which must be publicly disclosed pursuant to a statute." *FEC v. Akins*, 524 U.S. 11, 21 (1998). Informational injuries remain firmly embedded in both Supreme Court and circuit cases. *See, e.g.*, *Spokeo, Inc.*, 136 S. Ct. at 1549–50; *Akins*, 524 U.S. at 20–25; *Pub. Citizen v. DOJ*, 491 U.S. 440, 449 (1989); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 640 (2018); *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1105 (9th Cir. 2015), *as amended* (Jan. 19, 2016) (explaining the basis for informational injuries under FOIA); *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258–60 (9th Cir. 2010) (describing how courts have found informational standing based on the deprivation of a statutory rights to information).

Informational injuries exist absent the denial of a request for particular information. *See Akins*, 524 U.S. at 21 (holding that a group of voters had suffered a cognizable injury because they were denied information that the Federal

Election Campaign Act required be made public); *Waterkeeper All. v. Envtl. Prot. Agency*, 853 F.3d 527, 533 (D.C. Cir. 2017) (concluding an agency's action that "reduces the information that must be publicly disclosed" meant the plaintiff "(and others) who previously sought that information no longer have a statutory right to access it. For the purpose of standing, that's injury enough."). However, some cases describe the injury sustained by a FOIA plaintiff as the denial of a request for particular records. *Pub. Citizen*, 491 U.S. at 449 (noting that FOIA redresses the injury of those who "sought and were denied specific agency records"). This framing offers some intuitive appeal in the vast majority of FOIA cases, because the vast majority of FOIA cases arise under § 552(a)(3), the provision specifically requiring agencies to "make the records promptly available" upon request. However, FOIA's reading-room provision requires agencies to post certain categories of documents *without a request*. *See id.* § 552(a)(2); *Citizens for Responsibility & Ethics in Washington v. DOJ* ("*CREW II*"), 922 F.3d 480, 484, 488 (D.C. Cir. 2019); *Jordan v. DOJ*, 591 F.2d 753, 756 (D.C. Cir. 1978) (en banc) (observing that § 552(a)(2) records must be made "automatically available for public inspection; no demand is necessary"). The "invasion of a legally protected interest," *Spokeo, Inc.*, 136 S. Ct. at 1548, occurs when the agency decides not to post records qualifying for § 552(a)(2) treatment, or when a plaintiff visits the online reading room and information required to be there is nowhere to be found.[10] *Cf. Hajro*, 811 F.3d at 1102–03 (explaining the distinction between standing for "a *specific* FOIA request claim and a *pattern or practice* claim").

---

[10] In any event, the record indicates that Plaintiffs did in fact make requests for the documents at issue before litigation started.

Further, APHIS's decision to remove categories of records alleged to fall under § 552(a)(2) from its online reading room has caused Plaintiffs the type of harm Congress sought to prevent by obligating agencies to post these documents. *See Spokeo, Inc.*, 136 S. Ct. at 1549 (explaining that the "judgment of Congress" is "important" to "whether an intangible harm," including informational harm, "constitutes injury in fact"). The Supreme Court has "declared that the Act was designed to create a broad right of access to 'official information.'" *Reporters Comm. for Freedom of the Press*, 489 U.S. at 772 (quoting *Mink*, 410 U.S. at 80). FOIA is particularly concerned with records that "shed[] light on an agency's performance of its statutory duties." *Id.* at 773. Congress crafted the affirmative portion of FOIA to prevent the proliferation of "secret law" and to allow individuals "to know what their government is up to." *See id.* at 772 n.20, 773 (emphasis omitted) (quoting *Mink*, 410 U.S. at 105 (Douglas, J., dissenting)); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153–54 (1975). Bringing § 552(a)(2) records online and expanding the reading-room requirement to cover frequently requested documents, as accomplished by updates to FOIA, was specifically designed to reduce the need for individual requests and the corresponding lag time. *See supra* note 1. Yet the change of policy has required Plaintiffs to make requests for copies of the records previously publicly available—documents Plaintiffs allege must be posted with no request necessary. *See* 5 U.S.C. § 552(a)(2). We have no trouble concluding that Plaintiffs have suffered the kind of harm Congress sought to prevent.

That informational injuries may be redressed through public disclosure of the information—rather than merely providing copies of the information to individual

plaintiffs—is an unsurprising proposition given the traditional link between an informational injury and statutory provisions requiring publication of information. For example, the Supreme Court has found standing to seek an order requiring the DOJ to comply with the requirements of the Federal Advisory Committee Act, a law requiring public notice of advisory committee meetings and making advisory committee minutes, records and reports public. *Pub. Citizen*, 491 U.S. at 446–51. The D.C. Circuit has assumed standing under similar circumstances. *See Friends of Animals v. Jewell*, 828 F.3d 989, 995 (D.C. Cir. 2016) (explaining that plaintiffs "may well have informational standing to sue to compel the publication of the relevant data—that is, to compel compliance with [the Endangered Species Act's] *disclosure* requirement").

In sum, "[t]he doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance," *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004), and in this case, we answer yes. Plaintiffs have alleged they suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). Their inability to inspect documents in virtual reading rooms harmed them in real-world ways; their injuries are different from the injuries sustained by other Americans who never regularly visited these online reading rooms. Additionally, their alleged injuries are "fairly traceable" to the agency's action, and likely to be redressed by their requested relief. *See id.* at 1547. Thus, we have satisfied our "independent obligation" to assure ourselves that Plaintiffs have standing. *Summers*, 555 U.S. at 499; *Bennett*, 520 U.S. at 168.

## II.

FOIA vests in district courts the "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). This provision cloaks district courts with the authority to order an agency to post records in an online reading room. We reach this conclusion by following familiar lodestars: text, structure, and precedent.

### A.

Whether federal courts may order agencies to comply with FOIA's reading-room provision depends on whether such an order fits within FOIA's jurisdictional grant. It is axiomatic that we resolve questions of statutory interpretation starting with the text.

FOIA creates "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (citation omitted). Indeed, we have already defined the words "to enjoin" in § 552(a)(4)(B) as "[t]o legally prohibit or restrain by injunction. To prescribe, mandate, or strongly encourage." *Hajro*, 811 F.3d at 1101 (quoting *Enjoin*, Black's Law Dictionary (10th ed. 2014)). We interpret the words "to enjoin the agency from withholding agency records" to mean what they say: FOIA authorizes district courts to stop the

agency from holding back records it has a duty to make available, which includes requiring an agency to post § 552(a)(2) documents online. That the statute uses broad words to vest expansive equitable authority in district courts does not create ambiguity or vagueness.

Nor do we detect anything absurd about allowing district courts to halt violations of FOIA's clear command that agencies "shall" make certain records available for public inspection. *See* 5 U.S.C. § 552(a). To the contrary, reading the words "jurisdiction to enjoin [an] agency from withholding agency records," to mean Congress *withheld* jurisdiction to enjoin agencies from withholding agency records would directly contradict the plain text. We may not shirk our "sole function[,]" which "is to enforce [the statutory language] according to its terms." *Arlington Cent. Sch. Dist. Bd. of Educ.*, 548 U.S. at 296 (citation omitted).[11]

Not only does the plain meaning of the phrase "jurisdiction to enjoin [an] agency from withholding agency records" allow courts to order agencies to comply with their § 552(a)(2) obligations, but surrounding words confirm our reading. "[T]he Court will avoid a reading which renders some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995). If, as APHIS argues, Congress only authorized federal courts to "order the production" of records to a particular complainant, then the judicial-review

---

[11] Interpreting FOIA's "explicit" jurisdictional language, the Supreme Court has noted that the Senate Report explaining the addition of the "enjoin" phrase stated "[t]he provision for enjoining an agency from further withholding is placed in the statute to make clear that the district courts shall have this power." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 18 & n.18 (1974) (quoting S. Rep. No. 88-1219, at 7 (1964)).

provision would not need the words "jurisdiction to enjoin the agency from withholding agency records"; the latter phrase would do all of the necessary work. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004); *Bailey v. United States*, 516 U.S. 137, 146 (1995) (rejecting interpretation that would have made "uses" and "carries" redundant in statute penalizing using or carrying a firearm in commission of offense).

APHIS responds, arguing that we cannot give meaning to the "to enjoin" clause without rendering superfluous the "to order production" clause, because authority to "enjoin the . . . withholding" includes the power to "order the production" of documents improperly withheld. Not necessarily. The doctrine of *noscitur a sociis*, "which is that a word is known by the company it keeps," can work alongside the principle against rendering some words altogether meaningless. *See, e.g.*, *Gustafson*, 513 U.S. at 574–76.[12] Here, the judicial review provision uses the word "to" twice in the same sentence, providing "jurisdiction *to* enjoin . . . and *to* order." 5 U.S.C. § 552(a)(4)(B) (emphasis added). We find this significant. After all, "words are chameleons, which reflect

---

[12] Most often, *noscitur a sociis* applies when interpreting words in a list, and helps us resolve ambiguities by identifying a common trait among words and ruling out meanings that wouldn't make sense. *See, e.g.*, *Yates v. United States*, 135 S. Ct. 1074, 1081 (2015) (determining a fish is not a "tangible object" for purposes of obstruction of justice statute). However, we have also used this doctrine to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words," *Gustafson*, 513 U.S. at 575, because "a word is given more precise content by the neighboring words with which it is associated," *United States v. Williams*, 553 U.S. 285, 294 (2008). Thus, in *Gustafson*, the Court determined the word "communication" means a public communication, not *any* communication, because it appeared in a list of other words referring to "wide dissemination" and a broader definition would render other words redundant. 513 U.S. at 574–576.

the color of their environment." *Yates*, 135 S. Ct. at 1083 (quoting *Comm'r v. Nat'l Carbide Corp.*, 167 F.2d 304, 306 (2d Cir. 1948)). Where we can breathe life into every word of a sentence without having one phrase cannibalize another, we should. Thus, if the authority "to enjoin the agency from withholding" includes the authority to order the agency to produce copies of the withheld records to a particular person, the solution is to read the broader "to enjoin" clause as excluding the power created by the more specific "to order" clause to avoid superfluity.[13]

APHIS eschews reliance on the precise wording of the provision, and argues instead that we should rely on Congress's decision to use the word "and" instead of "or" to separate the words "to enjoin" and "to order." That is, the agency believes the "and" collapses the two parts of the sentence into a single type of order, one that "enjoin[s] the . . . withholding . . . and . . . order[s] the production of any agency records improperly withheld from the complainant." *See* 5 U.S.C. § 552(a)(4)(B). However, this interpretation exaggerates rather than minimizes the superfluity problem; the word "and" finds itself between two infinitives ("to enjoin . . . and to order"), and both sides of the "and" repeat the words "agency," "records," and forms of the word

---

[13] Indeed, the phrase "to enjoin the agency from *withholding* agency records" may very well refer to equitable prospective relief, whereas authority "to order the production of agency records improperly *withheld*" refers to equitable retrospective relief. *See* 5 U.S.C. § 552(a)(4)(B) (emphasis added); *cf. Hajro*, 811 F.3d at 1101 ("The plain language clearly contemplates declaratory and injunctive relief, which is what Plaintiffs seek."); *DOJ v. Tax Analysts*, 492 U.S. 136, 153 n.13 (1989) ("[O]nce an agency has complied with the subsection (a)(1) and (a)(2) obligations, it can no longer be charged with 'withholding' the relevant records.").

"withhold." *See* 5 U.S.C. § 552(a)(4)(B). In any event, "the mere possibility of clearer phrasing cannot defeat the most natural reading of a statute; if it could (with all due respect to Congress), we would interpret a great many statutes differently than we do." *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 416 (2012).[14]

B.

FOIA's structure confirms what the text of the judicial-review provision makes plain: district judges can order agencies to comply with their obligations under § 552(a)(2). To recap, FOIA's first provisions impose three chief duties on agencies, depending on the documents involved. 5 U.S.C. § 552(a)(1)–(3). Then, FOIA creates the machinery to address violations, such as authorizing judicial review, *id.* § 552(a)(4)(B), requiring the Office of Special Counsel to investigate particularly significant violations, *id.* § 552(a)(4)(F), and implementing reporting requirements to bolster congressional oversight, *see, e.g.*, *id.* § 552(e)(1)(Q) (requiring agencies to report the number of records made available for public inspection under § 552(a)(2)).

We start from the basic proposition that FOIA expressly contemplates judicial review of § 552(a)(2) violations. *Cf.*

---

[14] Even if APHIS's reading were correct, the judicial-review provision contains no clear command that limits *how* a district court may order "the production of any agency records . . . withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). That is, Plaintiffs here are asking the district court to determine whether agency records have been "improperly withheld" from Plaintiffs by the agency's failure to make the records available for reading-room inspection. A district court could order "the production" by ordering the agency to post records in an online reading room.

*Citizens for Responsibility & Ethics in Washington v. DOJ*
("*CREW I*"), 846 F.3d 1235, 1245 (D.C. Cir. 2017) ("FOIA
contains an express private right of action.").  To conclude
otherwise would conflict with the plain text of the judicial-
review provision and the statute's "duty-breach" structure.
Indeed, immediately following the language creating
jurisdiction "to enjoin" agencies from withholding records,
FOIA expressly provides the standard for reviewing
"feasibility" under § 552(a)(2)(C).  5 U.S.C. § 552(a)(4)(B).[15]

Although the parties seem to agree with this basic
proposition, they disagree about what relief a district court
may grant in § 552(a)(2) cases.  APHIS argues that the
judicial-review provision restricts courts to ordering agencies
to produce copies of the records to an individual plaintiff.
Yet this reading collapses an agency's affirmative
responsibility to post certain records (identified in the statute
by Congress) into an agency's responsibility to respond to
requests for copies of documents under § 552(a)(3).
However, § 552(a)(3) does not apply to "records made
available under paragraphs (1) and (2) of this subsection."
The idea of § 552(a)(3) annexing § 552(a)(2) for purposes of
judicial review creates particular problems in the case of
frequently requested documents required to be posted under
§ 552(a)(2)(D).  APHIS's interpretation would mean FOIA
deliberately brings certain § 552(a)(3) records into

---

[15] Additional FOIA provisions anticipate judicial review of an
agency's determination under § 552(a)(2).  *See, e.g.*, *id.* § 552(a)(6)(C)(i)
(deeming a "person making a request to any agency for records under
paragraph (1), (2), or (3) of this subsection" to "have exhausted his
administrative remedies with respect to such request if the agency fails to
comply with the applicable time limit provisions"); § 552(a)(6)(A)
(providing the timelines for when an agency must respond to requests "for
records made under paragraph (1), (2), or (3) of this subsection").

§ 552(a)(2)—specifically to preempt § 552(a)(3) requests—yet, if an agency shrugs that congressional command, the statute forces plaintiffs right back into the requests and backlogs Congress sought to avoid in the first place.

APHIS next argues that district courts only have authority to order agencies to produce copies of § 552(a)(2) records to particular plaintiffs, because the statute authorizes district courts to refer certain cases that raise questions about the agency's conduct to the Office of Special Counsel, but only if "the court orders the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(F)(i). APHIS argues it would be illogical for Congress to include such a provision if courts did in fact have authority under the "to enjoin" clause to order agencies to post § 552(a)(2) documents in online reading rooms, because a court "must do so at the price of losing its authority to institute disciplinary proceedings." However, the provision simply allows district courts, when ordering "records improperly withheld" to be produced, to flag when "agency personnel acted arbitrarily or capriciously," because these additional written findings trigger a mandatory duty for the Office of Special Counsel to investigate.[16] *See id.*

---

[16] The relevant part of § 552(a)(4)(F) reads:

> Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special

§ 552(a)(4)(F).  We see nothing irrational about isolating a particular evil—bureaucrats arbitrarily denying requests for copies of documents from particular people—for mandatory investigation.  Moreover, as "masters of their complaints," *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013), plaintiffs are free to seek relief that would not necessarily trigger a mandatory investigation.

Finally, APHIS argues that the judicial-review provision must only apply if there is a "request for records," because the provisions laying out the process for exhaustion of administrative remedies refer specifically to "request[s] [for records] under paragraph (1), (2), or (3) of this subsection." *See* 5 U.S.C. § 552(a)(6).  However, the judicial-review provision does not make a "request for records" a jurisdictional prerequisite. *See Yagman*, 868 F.3d at 1083. Although the enumerated provisions of the reading-room requirement say nothing about making a request to access records posted in an online reading room, "request[s] [for records] under paragraph . . . (2)" could refer to the undifferentiated text at the bottom of § 552(a)(2), which allows citizens to request a copy of the general index each agency must make available for public inspection.  *See* 5 U.S.C. § 552(a)(2) (requiring agencies to "provide copies of such index on request at a cost not to exceed the direct cost of duplication").

---

Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding.

C.

In addition to the text and structure of FOIA, several lines of Supreme Court and Ninth Circuit precedent support interpreting FOIA's judicial-review provision as authorizing district courts to order agencies to comply with their § 552(a)(2) obligations. First, the Supreme Court has interpreted the equitable power of district courts under FOIA broadly. *See Bannercraft Clothing Co.*, 415 U.S. at 20 ("With the express vesting of equitable jurisdiction in the district court by § 552(a), there is little to suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an equity court."). In fact, in *Bannercraft*, the Court even went so far as to note that the "enjoining" phrase in the judicial review provision was included to make clear that district courts had this power. *Id.* at 18 n.18. Our circuit has since interpreted and applied the teaching of *Bannercraft*, stating definitively that "Congress did not intend to limit the court's exercise of its inherent equitable powers where consistent with the FOIA." *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982).[17]

In addition to broad equity powers to provide relief for FOIA violations, our circuit has recognized that courts are the

_____

[17] We do not suggest that a district court's authority to order agencies to comply with their § 552(a)(2) obligations stems exclusively from its "inherent equitable powers." *See id.* Nor do we suggest that, just because a district court can order agencies to comply with § 552(a)(2), it has no discretion in designing this relief. *See Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 193 (1978) ("[A] federal judge . . . is not mechanically obligated to grant an injunction for every violation of law."). Our point is simply that *Bannercraft* and *Long* explain the long rein district courts enjoy vis-a-vis designing the appropriate remedies for FOIA violations. *See Bannercraft Clothing Co.*, 415 U.S. at 20; *Long*, 693 F.2d at 909.

"enforcement arm" of FOIA, meaning we have "the responsibility of ensuring the fullest responsible disclosure." *See Long*, 693 F.2d at 909; *cf. Yagman*, 868 F.3d at 1080 (concluding agencies must construe FOIA requests liberally to achieve the core purpose of FOIA). To ensure district courts live up to this special obligation, we have specifically instructed district courts to consider equitable relief when necessary to bar future FOIA violations. For example, in *Long*, we considered an Internal Revenue Service ("IRS") policy of delaying the release of requested documents to force individuals to file FOIA lawsuits; upon filing, the IRS would "voluntarily" release the documents. 693 F.2d at 908. The *Long* plaintiffs requested injunctive relief to prevent these delays, which the district court denied. *Id.* On appeal, we determined that "the IRS' contention that the district court lacks authority to grant the requested injunctive relief is without merit." *Id.* at 909. "[W]here the district court finds a probability that alleged illegal conduct will recur in the future, an injunction may be framed to bar future violations that are likely to occur." *Id.*

APHIS attempts to distinguish *Long* by arguing that *Long*'s injunctive relief was not "additional" relief to which plaintiffs were not entitled, because the injunction remedied prolonged delays in responding to FOIA requests. *See id.* at 908–09. We disagree. This argument simply assumes APHIS is correct that FOIA withholds authority to order compliance with the reading-room requirement. Within its grant of authority to district courts "to enjoin the agency from withholding agency records," 5 U.S.C. § 552(a)(4)(B), FOIA authorizes district courts to craft relief that includes requiring an agency to post § 552(a)(2) documents online.

*Long*'s legacy lives on.  Recently, we explained that *Long* is an example of a "claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Hajro*, 811 F.3d at 1103 (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)).  Like Plaintiffs' § 552(a)(2) claim, policy or practice claims stem from an agency's policy of violating FOIA rather than from the results of a particular request (such as a claim the agency has withheld requested material under an inapplicable exemption).  That is, an agency cannot moot a pattern or practice claim by providing the requested documents.  *Id.*; *Payne Enters., Inc.*, 837 F.2d at 491; *see also Animal Legal Def. Fund* v. *USDA*, No. 18-16327, 2019 WL 3770822, at \*3 (9th Cir. Aug. 12, 2019).  We cannot square our precedents with the agency's position that courts have no authority beyond ordering the agency to produce a copy of a requested document to the requester.

D.

APHIS's chief argument against allowing district courts to order compliance with the reading-room provisions relies on the D.C. Circuit's decision in *CREW I.  See* 846 F.3d at 1238–44.  We appreciate our sister circuit's analysis in *CREW I*, but do not agree that FOIA so constrains judicial enforcement of the reading-room provision.

At one time, the D.C. Circuit allowed district judges to order agencies to produce records for public inspection per FOIA's reading-room requirements.  *See e.g.*, *Am. Mail Line, Ltd. v. Gulick*, 411 F.2d 696, 703 (D.C. Cir. 1969) ("Thus, we conclude that the Board's April 11 ruling clearly falls within the confines of 5 U.S.C. § 552(a)(2)(A) and consequently it must be produced for public inspection."); *Merrill v. Fed.*

*Open Mkt. Comm. of the Fed. Reserve Sys.*, 413 F. Supp. 494, 506 (D.D.C. 1976) ("Defendant's other policy actions are subject to subsection (a)(2) of the Act and in accordance with that subsection must be made available for public inspection and copying unless promptly published."), *aff'd*, 565 F.2d 778 (D.C. Cir. 1977), *vacated on other grounds*, 443 U.S. 340 (1979).

Then the D.C. Circuit considered *Kennecott Utah Copper Corp. v. U.S. Department of Interior*, 88 F.3d 1191 (D.C. Cir. 1996). *Kennecott* analyzed whether a court could order an agency to publish a final regulation in the Federal Register, as required by 5 U.S.C. § 552(a)(1). *Id.* at 1201–02.[18] The D.C. Circuit concluded such relief did not fall within a court's authority to "order the production of any agency records improperly withheld from the complainant" under § 552(a)(4)(B). *Id.* at 1203. But it did not examine potential authority under the clause providing jurisdiction "to enjoin the agency from withholding any records." *Id.* Moreover, *Kennecott* involved a violation of § 552(a)(1)'s requirement to *publish* certain records in the Federal Register, whereas this case involves making certain records *available for public inspection* under § 552(a)(2). Making a record *available* for public inspection is synonymous with *producing* a record for public inspection. *See Gulick*, 411 F.2d at 703 (determining

---

[18] *Kennecott* is a midnight regulation case. Weeks before a presidential transition, the Department of the Interior ("DOI") promulgated a rule concerning certain hazardous wastes and sent it to the Office of the Federal Register for publication in the Federal Register. *Id.* With a new president in office, the DOI then withdrew the regulation before final publication. *Id.* The DOI promulgated a new rule, which Kennecott Copper challenged on procedural grounds, requesting the court to declare the earlier regulations valid and to direct the government to publish them in the Federal Register. *Id.*

a record "falls within" § 552(a)(2) and "consequently it must be produced for public inspection"). Thus *Kennecott* appeared to preserve that circuit's earlier holdings (in *Merrill* and *Gulick*) allowing district courts to order agencies to produce records for public inspection, because it explicitly distinguished *Merrill* as a case where the district court "ordered 'production' [for public inspection] of . . . records, not publication [in the Federal Register]." *Kennecott*, 88 F.3d at 1203 (citing *Merrill*, 413 F. Supp. at 507).

Next came *CREW I*. In that case, CREW filed suit under the APA to compel the DOJ's Office of Legal Counsel ("OLC") to disclose OLC opinions under FOIA's reading-room provision. *CREW I*, 846 F.3d at 1240. The D.C. Circuit affirmed the district court's dismissal of the suit, determining that CREW had not satisfied a predicate requirement for bringing suit under the APA because there was an "adequate remedy" under FOIA. *Id.* at 1244–1246; 5 U.S.C. § 704. The D.C. Circuit also determined that FOIA's "adequate remedy" extends to producing the records "only to CREW, not disclosure to the public." *CREW I*, 846 F.3d at 1244.

Thus, *CREW I* may have changed D.C. Circuit FOIA jurisprudence by relying on *Kennecott*—which concerned FOIA obligations to publish certain records in the Federal Register, 5 U.S.C. § 552(a)(1)—rather than its earlier cases, which had granted relief for violations of the reading-room provision. Moreover, *CREW I* acknowledged that *Kennecott* did not discuss the scope of the statutory language broadly authorizing injunctions against withholding of records, but concluded that *Kennecott* "implicitly" considered that language and limited the "scope of section 552(a)(4)(B) as a whole." *CREW I*, 846 F.3d at 1244. In particular, *CREW I*

relied on *Kennecott*'s statement that § 552(a)(4)(B) "is aimed at relieving the injury suffered by the individual complainant, not by the general public" because "[i]t allows district courts to order 'the production of any agency records improperly withheld *from the complainant*,' not agency records withheld from the *public*." *Id.* at 1243 (alteration and emphasis in original) (quoting *Kennecott*, 88 F.3d at 1203 (citing 5 U.S.C. § 554(a)(4)(B))).

We decline to follow our sister circuit's decision in *CREW I* for several reasons. First, *CREW I* renders the reading-room provision into precatory language, despite § 552(a)(2) imposing a mandatory duty for agencies to make certain records "available for public inspection" and § 552(a)(4)(B) granting "jurisdiction to enjoin the agency from withholding agency records." We can easily imagine the significant implications of rendering § 552(a)(2) a dead letter; an agency would have no enforceable duty to post its important staff manuals, or its interpretation of the statute it's charged with enforcing, or its final opinions in agency adjudication. *See id.* § 552(a)(2).

Second, the argument that FOIA's judicial-review provision is limited to "relieving the injury suffered by the individual complainant, not by the general public" is a red herring. *See CREW I*, 846 F.3d at 1243 (quoting *Kennecott*, 88 F.3d at 1203). The injuries complained of here *are* injuries sustained by individuals. Ordering an agency to upload records that FOIA mandates agencies will post in reading rooms would provide relief to plaintiffs, like those here, injured by the agency's failure to make those records so available.

Third, *CREW I* failed to appreciate how courts enforce other provisions of the U.S. Code that require agencies to post or publish records. *See, e.g.*, *Ctr. for Biological Diversity v. Kempthorne*, 466 F.3d 1098, 1099–1103 (9th Cir. 2006) ("[T]he [Endangered Species Act] . . . expressly directs the [U.S. Fish and Wildlife Service], when making a 'warranted but precluded' finding to 'publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based.' As this wasn't done, we reverse for remand to the Service." (quoting 16 U.S.C. § 1533(b)(3)(B))). Just as "shall" means parts of the warranted but precluded finding "[are]n't optional," *id.* at 1103, FOIA unequivocally mandates that agencies "shall make available" certain documents in virtual reading rooms. 5 U.S.C. § 552(a)(2); *Dep't of Air Force*, 425 U.S. at 361. ("[T]he Act repeatedly states that official information shall be made available to the public, for public inspection." (quotation marks omitted)).

Finally, we cannot ignore how an even newer D.C. Circuit case, *CREW II*, creates some tension with *CREW I*. Again, CREW sought to compel the OLC to "make available all of its formal written opinions . . . under the so-called 'reading-room' provision." *CREW II*, 922 F.3d at 483. But this time, CREW sued under FOIA. *Id.* at 485. The district court dismissed the complaint for failure to state a claim, and the D.C. Circuit affirmed. *Id.* at 483. However, in so doing, the D.C. Circuit seemed to read *CREW I* narrowly, as though that earlier decision was limited to the proposition that "CREW improperly brought its claim under the [APA] instead of FOIA's judicial-review provision." *Id.* at 485 (citation

omitted).**[19]**   Thus, D.C. Circuit law on this issue does not seem settled.

### III.

APHIS urges us to affirm the district court's dismissal on an alternative ground: Plaintiffs have not exhausted their FOIA claim.  However, judicial power to adjudicate a claim that an agency has violated § 552(a)(2)'s obligation to post agency records online does not turn on a request.  *See Yagman*, 868 F.3d at 1083 ("[E]xhaustion cannot be considered a jurisdictional requirement."); *CREW I*, 846 F.3d at 1240 ("[A] plaintiff may bring an action under FOIA to enforce the reading-room provision, and may do so without first making a request for specific records under section 552(a)(3).").  Indeed, APHIS itself concedes that exhaustion poses no jurisdictional bar.

Moreover, the district court dismissed the case for lack of subject matter jurisdiction without addressing the exhaustion question, so the issue is not even properly before us.  As an appellate court, we generally prefer to allow district courts to resolve issues first, particularly when they involve questions of fact.  *See Hawkins v. Kroger Co.*, 906 F.3d 763, 773 & n.11 (9th Cir. 2018).  Accordingly, we leave it to the district

---

**[19]** For example, *CREW II* does not describe either CREW's requested relief or § 552(a)(2) in terms indicating CREW was limited to seeking *copies* of the OLC opinions. *See id.* at 484 (describing how CREW "seeks to compel disclosure" of OLC opinions); *id.* at 486 (explaining that agencies "improperly" withhold records by "fail[ing] to comply with one of FOIA's 'mandatory disclosure requirements'" (quoting *Tax Analysts*, 492 U.S. at 150)).  Despite the fact that courts are "not free to pretermit the question" of subject matter jurisdiction, *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009), *CREW II* does not address jurisdiction.

court on remand to decide in the first instance whether Plaintiffs have exhausted their reading-room claim, or whether such exhaustion would be futile.

## IV.

The district court's order dismissing Plaintiffs' case for lack of subject matter jurisdiction also dismissed Plaintiffs' APA claims. Plaintiffs' first APA claim hinges on their allegation that, in the event we conclude there is no authority for district courts to order agencies to comply with FOIA's reading-room provision, then APHIS's failure to post categories of records previously available on the databases constitutes a "failure to act," reviewable as a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Having concluded that FOIA authorizes district courts to provide the relief Plaintiffs request, we affirm the district court's dismissal of the first APA claim.

We affirm the district court's dismissal of Plaintiffs' second APA claim for similar reasons. Plaintiffs' second APA claim alleges that the agency's decision to delete the databases constitutes final agency action reviewable under the APA's "arbitrary and capricious" standard. *Id.* § 706. Plaintiffs' allegations that FOIA's reading-room provision applies to all of the records in this case unlocked the gates for judicial review under FOIA. Because FOIA authorizes district courts to order agencies to comply with the reading-room provision and supplies the standard for reviewing such

claims, the potential for meaningful relief under FOIA displaces the APA's catch-all cause of action. *See id*. § 704.

**REVERSED in part, AFFIRMED in part, and REMANDED.**[20]

---

CALLAHAN, Circuit Judge, dissenting in part:

For the reasons set forth by the D.C. Circuit in *Citizens for Responsibility and Ethics in Washington v. Department of Justice*, 846 F.3d 1235, 1244–46 (D.C. Cir. 2017), I would hold that the Freedom of Information Act ("FOIA") provides an adequate alternate remedy and that "courts lack authority under FOIA to order agencies to 'make [records] available for public inspection.'" *Id.* at 1246 (alteration in original) (quoting 5 U.S.C. § 552(a)(2)). This holding is founded on the determination that "Section 552(a)(4)(B) . . . 'is aimed at relieving the injury suffered by the individual complainant, not by the general public' as '[i]t allows district courts to order "the production of any agency records improperly withheld *from the complainant*," not agency records withheld from the *public*.'" *Id.* at 1243 (alteration in original) (quoting *Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996)).

Contrary to the majority's position that this distinction is a "red herring," this is the crux of the dispute, as stated in plaintiffs' own words: "In this case, plaintiffs have demonstrated informational injuries that can only be remedied by production of the disputed records to the *public*

---

[20] Each party shall bear its own costs on appeal.

*at large*." (Emphasis added). Plaintiffs argue their injury is "based on the *public's* inability to access the records." This is exactly what the D.C. Circuit rejected: section 552(a)(2) allows "an injunction that would . . . require disclosure of documents . . . only to CREW, not disclosure to the public." 846 F.3d at 1244. This is also the basis for the district court's dismissal for lack of subject matter jurisdiction: "courts cannot compel agencies to make documents available to the public at large under FOIA's reading room provision" and thus "this court lacks jurisdiction to hear plaintiffs' FOIA claim." Ordering the publication of documents to the individual plaintiffs is not the same as ordering the publication of documents to the public at large. Because the latter is foreclosed by section 552(a)(4)(B), I would affirm the district court's dismissal of plaintiffs' FOIA claim for lack of subject matter jurisdiction.